**SIMMS et al. v. CITY OF SHERMAN.**

No. 13487.

Court of Civil Appeals of Texas. Dallas.

April 28, 1944.

Rehearing Denied June 2, 1944.

W. F. Bane, of Dallas, A. B. Curtis and A. L. Camp, both of Fort Worth, and Borden M. Seaberry, of Weatherford, for appellants.

George L. Hamilton, City Atty., of Sherman, for appellee.

YOUNG, Justice.

Appellants, Pastor and Trustees of the Church of God, of Sherman, Texas (an unincorporated religious body), are here protesting a judgment of permanent injunction. They had been using a structure located in the residential area of Sherman as a church, and for public worship; the particular use being prohibited by appellee's zoning ordinance, whereby churches were given local retail classification.

The City of Sherman initiated comprehensive zoning in June, 1936. Five classes of use districts were named: A-dwelling, B-apartment, C-local retail, D-commercial and E-first manufacturing. The ordinance followed closely the provisions of Art. 1011a–1011h, Vernon's Ann.Civ.Sts., and authorized boards of zoning and adjustment. Section 13 (ordinance) also provides, in part: "No building, sign, bill board, tent, box car, shack or other structure in use at the time of the adoption of this ordinance shall be changed in use until a certificate of occupancy and compliance shall have been issued by the building inspector, stating that such change in use complies with all the building, fire, sanitary, and health laws and ordinances of the City of Sherman and with the provisions of these regulations. And no vacant lot or

other open space, nor any premises shall be used or occupied nor changed in use or occupancy until a certificate of occupancy and compliance shall have been issued by the building inspector, stating that such use or change in use complies with all the building, fire, sanitary and health laws and ordinances of the City of Sherman and with the provisions of these regulations."

At the time aforesaid zoning law took effect, the northeast corner of Odneal and Gribble Streets (resident district) was occupied by a building 30 to 40 feet wide and 40 feet long, and became a nonconforming use. Presumably built for a filling station, it had since been used as a garage, then as a Helpy-Selfy laundry, with proprietor living there part time; but had been vacant for some two years before trial (July, 1943). On other portions of the block are residences; similarly as to blocks north and south, with local retail lots on far corners; the dwelling district, including by far the larger part of the municipal area. A number of churches are in the residential district of Sherman, in the main, erected before zoning; however, Roscoe Russell, of the city tax office, testified that, since passage of the ordinance, a permit had been issued to the Assembly of God for a church building; also for a Baptist church to rebuild after a fire; both locations in residential areas.

Appellants began holding religious services at the Odneal-Gribble Streets building in November, 1942; and Rev. Simms, Pastor, testified to talking with Mr. Richardson, building inspector, the following January about utilizing the site as a permanent location, by bringing in lumber from another place to improve the structure; of being assured by such official that the lot could be used for such purpose, whereupon steps were taken toward its purchase. Mr. Richardson, on the other hand, denied this, stating to Simms (as he said) that the lot was in a residential district and any request for permit would be refused. In March, a complaint was filed by the building inspector, and subsequent conferences between administrative officials and the church Trustees were to no avail. Though Simms admitted knowledge of aforesaid ordinance restrictions, his Trustees purchased the lot early in April. Later on, an application for certificate of compliance and occupancy was filed by appellants with the building inspector, and by him denied, from which the following material parts are quoted:

" * * * We, The Church of God of Sherman, Texas, having applied to the City of Sherman under provisions of the ordinances of the City of Sherman for permission to occupy a certain building approximately 30 X 40 feet located at the S. W. corner of Odneal and Gribble Sts., in the Town of Sherman, Texas, and the privilege of occupying a vacant lot immediately adjacent thereto on the south side of said building, said building and said lot being known as Lots Nos. 7 and 8, Block 28 of W. Elliott's Addition to the Town of Sherman, Texas, on the west side of Gribble St., in the City of Sherman, Texas, do hereby declare and affirm that the said The Church of God of Sherman, Texas, will be used or occupied only as a place of public worship. (I) We understand that should the said The Church of God of Sherman, Texas, be used or occupied in violation of this agreement or in violation of any of the provisions of any building, fire, sanitary, health or zoning laws or ordinances of the City of Sherman, that we shall be subject to a fine of not more than $100.00 per day as long as such violation exists or is permitted to exist. The Church of God of Sherman, Texas. By Virgil Easly, Victor Hammer, C. B. Follis.

"Subscribed and sworn to before me this the 26th day of April A. D. 1943. Will H. Evans, Notary Public in and for Grayson County, Texas. Date April 29, 1943. * * * I, George Richardson, Building Inspector for the City of Sherman hereby certify that the building on the corner of Odneal and Gribble or the proposed use of the same on the premises does not comply with the zoning ordinance of the City of Sherman as this would be nonconforming use of the property in a residential district * * *."

Other testimony disclosed that appellants had run an extension cord to the outside for purpose of electric lighting; putting up a sign designating the church and nature of services held. Seemingly, no attempt was made to comply with city requirements relative to fire, sanitation and health; Rev. Simms stating to Police Chief Tribble, after differences had arisen, that "he didn't recognize any law but God's, these others didn't make any difference." Church membership comprised some twenty to thirty-five people, its services consisting generally of sermons, singing of religious hymns and prayer services.

Coincident with the refusal to grant certificate of occupancy, appellee instituted this action, as authorized by Art. 1011h, V.A. C.S., whereby defendants were temporarily restrained from using the building after 9:30 p. m.; and upon final trial, a permanent injunction issued as already stated. Appellee's basic pleadings are not altogether clear, the first implication thereof being that defendants could have secured a special permit by showing compliance with Sec. 13 of the ordinance above quoted, which they failed to do, rendering their particular use unlawful; next alleging defendants' intrusion upon a residential area with its nonconforming use (a church), stating that the necessity of injunctive relief was "to protect the people living in the residential district immediately adjacent to the property above described, said people having no adequate remedy at law, and in order to permit them to enjoy the peace, and quiet and comfort of their home and to promote the general welfare of the citizens of Sherman, especially near and around the property above described, and to prevent the depreciation of at least $500.00 for each home or residence in this residential district in the City of Sherman, * * *." Appellee's trial petition closed by praying generally for relief by way of permanent injunction against all defendants in their use of the described property as a place of worship. The court's finding of fact (made a part of judgment) recited the attempt of defendants to occupy the site, a nonconforming use under zoning laws, without securing certificate of occupancy, finding that they were "using said building for purposes other than a residence in violation of the provisions of said ordinance and among other things did electric wiring, erected signboards and connected utilities in violation of the ordinances of the City of Sherman"; the judgment, however, perpetually enjoining and forbidding defendants' use of the described property except for residential purposes.

■ The gist of appellants' several points of error is that aforesaid zoning ordinance, prohibiting use of this property for a church in the residential district of Sherman, is arbitrary, discriminatory and violative of both Federal and State Constitutions, Texas Art. 1, Sec. 19, Vernon's Ann.St.; U.S. Amendments 1 and 14. Otherwise stated, appellants challenge the restriction as having no real or tangible relation to the public health, safety, morals or general welfare, and therefore void.

"Zoning measures must find their justification in the police power exerted in the interest of the public." State of Washington v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 51, 73 L.Ed. 210, 86 A.L.R. 654; and ordinances enacted pursuant thereto are invested with a strong presumption of validity; Annotation, 86 A.L.R. 665. Use districts to which the announced principle is applicable are classified generally as residential commercial and industrial; such divisions of land and property concededly having a substantial relation to the health, safety, comfort and convenience of any given community. But from the beginning of zoning, a distinction has been recognized between above classification and property devoted to humanitarian or noncommercial uses, such as churches, schools and hospitals. Indeed, it did not occur to early zoning authorities that the latter class of use could properly be excluded from any district; Bassett on Zoning, p. 70. Says the author, page 200: "Practically all zoning ordinances allow churches in all residence districts. It would be unreasonable to force them into business districts where there is noise and where land values are high, or into dense residence districts (in cities which have established several kinds of such districts). Some people claim that the numerous churchgoers crowd the street, that their automobiles line the curbs, and that the music and preaching disturb the neighbors. Communities that are too sensitive to welcome churches should protect themselves by private restrictions." In State ex rel. Synod of Ohio v. Joseph, 139 Ohio St. 229, 39 N.E.2d 515, 524, 138 A.L.R. 1274, where the church was refused admission to resident district while lots in the business space were available, right of user was upheld. The Ohio Court, in a well-considered opinion, held that a church, as normally activated, bore no relation to those factors-underlying constitutional zoning, concluding, "that the administrative act of respondents in refusing a permit to erect a church in the residential district, there being no adequate showing that this exclusion of the church was in furtherance of the public health, safety, morals or the public welfare, was arbitrary and unreasonable and in violation of relator's rights under the State and Federal Constitutions."

■■ It would thus appear that the assumption of validity usually ascribed to

zoning legislation relative to subject matter properly within its sphere, does not extend to the proscription of churches en masse from residence districts. So here, if the exclusion of appellants' church from the corner of Odneal and Gribble Streets be promotive of "public health, safety, convenience," etc., under particular facts and circumstances, the burden was upon appellee City to establish it. This primary issue, raised by general allegations of the instant petition, was not developed.

Appellee rather concedes invalidity of its legislation restricting churches to commercial or industrial districts, stating in reply brief: "Permits have been granted to build a church in the residential district since the zoning ordinance has been in effect, but in every instance, with the exception of appellants, they have followed the regulations of the zoning ordinance by making application and getting the approval of the City Officials, showing that they have complied with fire, sanitary and health laws," the requirements of Sec. 13, heretofore quoted, being obviously referred to. The statement just made is quite at variance with the written refusal of Inspector Richardson and the challenged judgment, in that, the sole basis for prior rulings was the ordinance prohibiting appellants' location in any residential area. We have already pointed out that churches as a class bear no substantial relation to the health, safety, morals, convenience, etc., of plaintiff city; and there appearing no evidence affirmatively indicating that aforesaid residential district would be adversely affected by the contemplated use, the ordinance, in such regard, must be held unreasonable.

This is not to say, however, that appellants' occupancy may be without regulation. In Sec. 13 of the ordinance in question are valid municipal requirements, irrespective of zoning: " * * * no * * * premises shall be used or occupied nor changed in use or occupancy until a certificate of occupancy and compliance shall have been issued by the building inspector, stating that such use or change in use complies with all the *building, fire, sanitary* and *health* laws * * *." (Italics ours.) In above application for permit, made to the building inspector, defendants are committed to an observance of all regulatory measures of the city, and incident to their particular use; further compliance therewith under ordinance or otherwise having been prevented by injunction. On the other hand, there is evidence that, in the attempted user, appellee's laws relative to fire, health, sanitation, etc., are being ignored. Such regulations, so far as reasonable and applicable to the structure and use involved, may be enforced; and to that extent, appellants' rights are subject to issuance of the named certificate of occupancy.

The judgment appealed from is reversed and injunction dissolved. Appellant parties should be allowed to comply with such requirements of Sec. 13 as may be necessary and appropriate to their use of the described property for church purposes; being thereby entitled to the permit requested. Otherwise and in event of noncompliance, the provisions of Art. 1011h, V.A.C.S., would thereupon become available to the City of Sherman.

Reversed and injunction dissolved with instructions.